# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
_____

**AERO-STREAM, LLC,**
    **Plaintiff,**

**v.**                         **Case No. 12-cv-0190**

**SEPTICAIRAID, LLC and**
**ARTIE ZABEL,**
    **Defendants.**
_____

## **DECISION AND ORDER**

    Plaintiff Aero-Stream LLC brought a patent infringement claim against a former employee, Artie Zabel and a company he formed, SepticairAid LLC. Defendants asserted several counterclaims. Plaintiff voluntarily dismissed its claim, and in this decision I resolve its motions relating to the defendants' counterclaims.

## **I. Background**

    Plaintiff sells septic aerators, a product which assists septic systems in functioning. In 2007, plaintiff's owner, Karl Holt, patented the aerobic method that the product employs and assigned the patent to Aero-Stream. Also in 2007, plaintiff hired Zabel to run its internet marketing. In 2010, plaintiff fired Zabel. In 2011, Zabel formed SepticairAid which also sells septic aerators. According to plaintiff, SepticairAid began to place false and uncomplimentary information about plaintiff's products on its website. In response, Holt created a company called "Septic Air Aide, LLC," registered several domain names consisting of variations of the term "septicairaid," linked many of the URLs to plaintiff's website, and set up a website entitled "Septic Aeration Scams" the URL of which was "septicairaid.net." According to Zabel, the website hosted a video making false statements

about a septic aeration device similar to SepticairAid's.

Plaintiff filed two lawsuits against defendants, the present suit and a state court action alleging business tort claims. Defendants' counterclaims in the present case are for declaratory judgment of patent non-infringement and patent invalidity and for trademark infringement, unfair competition, and cybersquatting under The Lanham Act.[1] Before me now are plaintiff's motions for summary judgment and sanctions with respect to defendants' trademark-related counterclaims and plaintiff's request to dismiss as moot defendants' patent non-infringement and invalidity counterclaims.

## II. Trademark Counterclaims

Defendants allege trademark infringement in violation of 15 U.S.C. § 1125(a)(1)(A), unfair competition in violation of 15 U.S.C. § 1125(a)(1)(B), and cybersquatting in violation of 15 U.S.C. § 1125(d). The Lanham Act only protects marks which by definition are distinctive, 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11:2 (4th ed.) ("If a designation is not 'distinctive,' it is not a 'mark.'"). Thus, in order to prevail on their trademark-related counterclaims defendants must establish that the term "SepticairAid" is a distinctive mark. *See DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004) (listing valid trademark as an element of a cybersquatting claim); *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (listing protectable mark as an element of an unfair competition claim); *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998) (listing valid trademark as an element of a trademark infringement claim).

---

[1] SepticairAid also filed a separate federal suit against Karl Holt alleging the same trademark-related claims it asserts in its counterclaims in the present case.

Whether or not a mark is distinctive is an issue of fact. 2 McCarthy, *supra* § 11:3. However, if no reasonable fact finder could conclude that the mark "SepticairAid" is distinctive, I may grant summary judgment on the issue. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). Marks fall into five categories based on increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A generic mark identifies the type or genus of a particular product and is not distinctive and never protectable. *Id.*; *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1157, 1160 (7th Cir. 1996) (listing "light beer" as an example of a generic mark because "light" designates a subcategory of beer). Plaintiff argues that "SepticairAid" is generic, but I disagree. The term does not define a subcategory of septic aids and is not a term commonly used to name or designate a kind of goods. *See Mil-Mar Shoe Co., Inc.*, 75 F.3d at 1157, 1160.

The real dispute is whether "SepticairAid" is descriptive or suggestive. A descriptive mark "describes the ingredients, qualities, or characteristics of an article of trade or a service" and is generally not entitled to trademark protection unless it acquires secondary meaning "in the collective consciousness of the relevant community." *Id.* at 1157. Examples of descriptive marks include "Work-N-Play," "Holiday Inn," "All Bran," and "American Girl." *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007) A suggestive mark "calls to mind some attribute of the products," *id.* at 486, and is entitled to trademark protection because it is inherently distinctive. *Platinum Home Mortg. Corp.*, 149 F.3d at 727. To distinguish between descriptive and suggestive marks, I use the "degree of imagination test," which provides that: "If the mark imparts information directly

3

it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 952 (7th Cir. 1992) (internal quotations and citation omitted). The fact that a term is unfamiliar or a play on words does not render it suggestive; "imagination required to link a suggestive term with a corresponding product 'refers to the mental process required to connect a name that is incongruous or figurative of the product.'" *Id.* 953 (quoting *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.3d 985, 997 (7th Cir. 1989)). Examples of suggestive marks include "Mr. Clean," "Gleam Toothpaste," and "Roach Motel." *Custom Vehicles, Inc.*, 476 F.3d at 486; *Sands, Taylor & Wood Co.*, 978 F.2d at 953.

I conclude that "SepticairAid" is a descriptive mark, and that no reasonable fact finder could conclude that it is suggestive. The term consists of three words, "septic," "air" and "aid." These words directly describe what the product does; it aerates septic systems. Defendants present two arguments that the term is suggestive; first, that it does not describe the specific device sold by the company, as distinguished from other septic aerators; that is, it "does not describe an aeration system which uses a pump, tube, an air stone." Defs.' Br. in Opp. to Pl.'s Mot. for Summ. J., at 17 (ECF No. 125). However, to be considered descriptive, a mark need not contain a complete description of a product. A mark is descriptive if it describes "a product characteristic that figures prominently in the consumer's decision whether to buy the product or service in question." *Custom Vehicles, Inc.*, 476 F.3d at 483. The term "SepticairAid" does just that.

Second, defendants argue that the use of the word "Aid" makes the term suggestive

4

because it requires some operation of the imagination to determine how the product aids the septic system. However, the presence of the word "aid" does not make "Septicairaid" suggestive: "no flight of imagination or keen logical insight is required" to deduce that the product is designed to "aid" or improve septic systems. *G. Heileman Brewing Co., Inc.*, 873 F.2d at 993; *see also Sands, Taylor & Co.*, 978 F.2d at 953 (concluding that "'no flight of imagination or keen logical insight is required' to make the connection between 'Thirst Aid' and a product that quenches thirst"). The presence of the word "air" makes it even clearer that the mark is descriptive because it is the addition of air that aids the septic system. In sum, the term "Septicairaid" directly describes for the consumer how the product aids the septic system.

Despite being descriptive, defendant can still establish that "SepticairAid" is a mark entitled to protection under the Lanham Act by showing that the term has acquired distinctiveness through secondary meaning. Whether a descriptive mark has acquired secondary meaning is an issue of fact, 6 McCarthy, *supra* § 32:119, and I may not grant summary judgment unless, taking all facts in favor of defendants, there is no genuine issue of material fact as to whether the term has acquired secondary meaning. *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). To establish secondary meaning, defendants must show that "in the minds of the public, the primary significance of [the term 'SepticairAid'] is to identify the source of the product itself." *Two Pesos, Inc.*, 505 U.S. at 766 n.4; *see also* 2 McCarthy, *supra* § 11:25 (defining secondary meaning as "consumer acceptance and recognition of such marks as denoting only one seller or source"). In determining whether defendants have established secondary meaning, I

5

consider: "(1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys." *Platinum Home Mortg. Corp.*, 149 F.3d at 728. Defendants have provided no consumer testimony or surveys, thus I rely on the first three factors.

To support their argument that a fact issue exists as to whether the term "SepticairAid" has acquired secondary meaning, defendants point out that it has operated a website for 35 months and that the website has been accessed more than 129,000 times by 108,867 unique visitors. However, since 2011, the company has generated a very small amount of gross sales revenue, only $117,000. Further, it has spent only $3,000 on advertising and nothing since 2012. Based on these numbers, no reasonable fact finder could conclude that the term "SepticairAid" has developed secondary meaning. SepticairAid has been in business a very short time, has spent virtually nothing on advertising and has averaged less than $40,000 a year in gross sales. *See Custom Vehicles, Inc.*, 476 F.3d at 486 ("[W]ithout significant sales (always excepting the case of the superexpensive prototype) the mark could not achieve secondary meaning."). Internet visibility does not indicate consumer acceptance or recognition and, in itself, is insufficient to overcome the company's meager sales and non-existent advertising. *See, e.g., 555-1212.com, Inc. v. Commc'n House Int'l, Inc.*, 157 F. Supp. 2d 1084, 1091 (N.D. Cal. 2001) (concluding that status as one of the top 500 websites that attract the most unique visitors indicates only "that a large number of Internet users visit plaintiff's web site" and "does not provide any reasonable inference . . . that these users perceive plaintiff's domain name as a brand name").

Because defendants fail to show that the term "SepticairAid" is a protectable mark under the Lanham Act, all of its trademark claims must be dismissed. However, I decline to impose sanctions for asserting these claims. I cannot say that defendants filed the claims with the purpose to harass, cause unnecessary delay, or needlessly increase the cost of litigation, *see Kapco Mfg. Co., Inc. v. C&O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989), or that the claims were frivolous or filed without a reasonable and competent inquiry, *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 968–69 (7th Cir. 2000).

### IV. Patent Counterclaims

Turning to the patent-related counterclaims, defendants seek a declaratory judgment that plaintiff's patent is invalid and/or that they are not infringing it. I previously granted plaintiff's motion to dismiss its patent infringement claims based on the parties' agreement. The unresolved issue is whether, now that the infringement claims are no longer pending, I still have jurisdiction over the counterclaims for declaratory judgment.

The Declaratory Judgment Act only grants jurisdiction over "actual controvers[ies]," 28 U.S.C. § 2201(a), and it may not be used to "secur[e] an advisory opinion in a controversy which has not arisen." *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945); *see also Matthews Int'l Corp. v. Biosafe Eng'g*, 695 F.3d 1322, 1329 (Fed. Cir. 2012) ("A party may not obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement."). "A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between

7

the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Benitec Australian, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007)). Because there are no longer pending infringement claims which would give rise to an actual controversy between the parties, defendants must demonstrate a substantial risk that plaintiff will bring future infringement claims in order to establish an actual controversy sufficient for me to maintain jurisdiction. *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir. 2014). This requires more than "the residual possibility of a future infringement suit." *Benitec Australian, Ltd.*, 495 F.3d at 1345–46 (internal quotations and citation omitted).

I conclude that there is not an actual controversy sufficient to justify continued jurisdiction over defendants' declaratory judgment claims. Since this case was filed, defendants forced a reexamination of plaintiff's patent, and the only portion of the patent which plaintiff alleged defendants had violated was invalidated. Thus, plaintiff cannot bring the same patent infringement claim again. *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1249–50 (Fed. Cir. 1997) ("[T]he making of substantive changes in the claims [during reexamination] is treated as an irrebuttable presumption that the original claims were materially flawed. . . relieving those who may have infringed the original claims from liability during the period before the claims are validated.").[2] Further, plaintiff states that it has no plans to bring infringement claims based on the reexamined patent because

---

[2] Despite the fact that plaintiff asserts its voluntary dismissal of its patent claims is without prejudice, it is clear–and plaintiff admits–that it cannot bring the infringement claim alleged in this lawsuit again. Thus, the parties' preoccupation with whether the dismissal is with or without prejudice is inconsequential because the effect is the same.

defendants' sales figures are so low. And, for plaintiff to bring a second infringement suit based on the reexamined patent would, indeed, make little sense.

Defendants argue that plaintiff's two lawsuits, *Danisco U.S. Inc.*, 744 F.3d at 1332 (concluding that a demonstration that a party "has engaged in a course of conduct that shows a preparedness and a willingness to enforce its patent rights" as a factor weighing in favor of jurisdiction (internal quotations and citation omitted)), and the absence of a covenant not to sue for infringement in the future, *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1357 (Fed. Cir. 2013) ("[A] covenant not to sue a declaratory judgment plaintiff can moot a controversy between the parties."), are enough to justify continued jurisdiction. But plaintiff voluntarily dismissed its infringement claims rather than amending to pursue infringement claims based on the reexamined patent. And the absence of a covenant not to sue does not automatically give rise to jurisdiction. Plaintiff's actions and representations indicate that it is unlikely that plaintiff will pursue further patent litigation against defendants. The remote possibility of a claim at some point in the future is too speculative to support jurisdiction. Thus, I will dismiss defendants' patent-related counterclaims.

## IV. Attorneys' Fees

Finally, defendants argue that they should receive attorneys' fees for defending plaintiff's patent infringement claim now that plaintiff has voluntarily dismissed it. Generally, when a plaintiff voluntarily dismisses its claims but remains in a position to bring them again, "a court imposes a term and condition of dismissal that plaintiff pay the defendant the expenses he has incurred in defending the suit, which usually includes reasonable

attorneys' fees. . . . [S]uch terms and conditions 'are the quid for the quo of allowing the plaintiff to dismiss his suit without being prevented by the doctrine of res judicata from bringing the same suit again.'" *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir. 1994) (quoting *McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985)). However, the parties concede that the reexamination precludes plaintiff from bringing the same claim again. That plaintiff could conceivably bring a future infringement claim based on the reexamined patent does not change this analysis; a future infringement claim based on the reexamined patent would be legally and factually different, especially considering that the only portion of the original patent which plaintiff alleged defendants violated was invalidated. Thus, defendants will not incur duplicative legal expenses, and the rationale that defendant relies on for seeking attorneys' fees disappears. *See Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985) (stating that attorneys' fees are meant to address the fact that "the defendant may have to defend again at a later time and incur duplicative legal expenses").

Further, defendants request $70,074.68 in fees, and this total appears to include fees unrelated to defense of the patent infringement claims, such as fees for prosecuting defendants' trademark counterclaims and for defending the state court case. It is impossible to discern from defendants' submission how much of the amount requested was actually incurred defending the patent infringement claims.

**THEREFORE, IT IS ORDERED** that plaintiff's motion for summary judgment (ECF No. 108) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for sanctions (ECF No. 118) is

**DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to file sur-reply (ECF No. 148) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 5th day of March, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge